JOHN M. GENGA (SB# 125522)
GENGA & ASSOCIATES, P.C.
jgenga@gengalaw.com
16000 Ventura Boulevard, Suite 1000
Encino, CA  91436
Telephone: (747) 231-3400
Facsimile: (818) 474-7070

Attorneys for Plaintiffs
MICHAEL GABRIELE, DAVID ROCKE
and LEAFY LANE LIMITED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GABRIELE, an individual; DAVID ROCKE, an individual; and LEAFY LANE LIMITED, a British Virgin Islands corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> ENIGMA-BULWARK, LIMITED, a Nevada corporation; ENIGMA-BULWARK RISK MANAGEMENT, INC.,  a Delaware corporation; EDWARD W. WITHROW, III, an individual; KYLE W. WITHROW, an individual; CALLI BUCCI, an individual; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: _____ <br><br> COMPLAINT FOR: <br><br> (1) BREACH OF CONTRACT; <br> (2) DECLARATORY RELIEF; <br> (3) FRAUD; <br> (4) NEGLIGENT MISREPRESENTATION; <br> (5) BREACH OF FIDUCIARY DUTY; <br> (6) *ULTRA VIRES* CONDUCT; <br> (7) DEFAMATION; AND <br> (8) INVASION OF PRIVACY <br><br> DEMAND FOR JURY TRIAL |

## INTRODUCTORY STATEMENT OF THE CASE

1. With defendant Edward W. "Ted" Withrow, III pulling its corporate strings – in violation of a criminal judgment by which the Securities and Exchange Commission ("SEC") has barred him from so acting – defendant Enigma-Bulwark, Limited ("EBL") has withheld over $1 million owed by contract to plaintiffs, and allowed Withrow to loot the company with the help of other defendants to the

detriment of all its shareholders.  Each plaintiff sues EBL for the latter's failure to pay them cash and stock compensation for which they expressly contracted in writing, and for its failure to take the steps necessary for plaintiffs to obtain the benefits of their contracts as required by the covenant of good faith and fair dealing implied therein.  Plaintiffs further have information that EBL had no intention to, and did not reasonably believe that it could, perform as promised, and that the other defendants made false promises to further Ted Withrow's improper use of the publicly traded EBL as his personal piggy bank.  Also, two plaintiff shareholders of EBL bring this action derivatively to recover for EBL and its shareholders funds misappropriated by Ted Withrow as aided and abetted by the other individual defendants, and to redress other harms caused by acts in excess of Withrow's authority in light of the SEC's judgment against him.  Finally, plaintiff Rocke sues for defamation and invasion of privacy arising from false statements made about him in EBL public filings and from use of his identity without authorization to make a public filing falsely attributed to him.

<u>JURISDICTION AND VENUE</u>

2.     The Court has jurisdiction over this matter under 28 U.S.C. § 1332, in that the amount in controversy exceeds $75,000 and, as detailed further below, all plaintiffs are citizens of a U.S. or foreign state diverse from the states of citizenship of all defendants.

3.     This Court has personal jurisdiction over all defendants under the Due Process Clause of the United States Constitution in that, as detailed further below, defendants are largely domiciled within this forum state.

4.     Venue is proper in this Court under 28 U.S.C. § 1391, in that, as detailed further below, defendants largely reside in this judicial district.

<u>THE PARTIES</u>

5.     Plaintiff Gabriele is an individual who resides in the state of Pennsylvania.

6. Plaintiff Rocke is an individual who resides in the British overseas territory of Bermuda.

7. Plaintiff Leafy Lane Limited ("Leafy") is a corporation organized and existing under the laws of, and with its principal place of business in, the British Virgin Islands, and is owned by Rocke. This pleading hereafter refers to Gabriele, Rocke and Leafy collectively as "Plaintiffs," and each separately as a "Plaintiff."

8. Plaintiffs are informed and believe and on that basis allege that defendant EBL is a publicly traded corporation organized and existing under the laws of the state of Nevada, with its principal place of business in this judicial district in the state of California.

9. Plaintiffs are informed and believe and on that basis allege that defendant Enigma-Bulwark Risk Management, Inc. ("EBRM") is a corporation, wholly owned by EBL, and organized and existing under the laws of the state of Delaware, with its principal place of business in this judicial district in the state of California.

10. Plaintiffs are informed and believe and on that basis allege that defendant Ted Withrow is an individual who resides in this judicial district in the state of California.

11. Plaintiffs are informed and believe and on that basis allege that defendant Kyle Withrow is an individual who resides in Austin, Texas, but who at the times relevant hereto served as an officer and director of EBL in this judicial district.

12. Plaintiffs are informed and believe and on that basis allege that defendant Bucci is an individual who resides in this judicial district in the state of California, and who at the times relevant hereto has served as Chief Financial Officer of EBL. This pleading hereafter refers to EBL, EBRM, Ted Withrow, Kyle Withrow and Bucci collectively as "Defendants," each separately as a

**COMPLAINT**

"Defendant," EBL and EBRM as the "Corporate Defendants," and all others as the "Individual Defendants."

13.   Plaintiffs do not know the identities of the defendants named herein as Does 1 through 10, inclusive, and therefore sue those defendants by such fictitious names.  Plaintiffs will seek leave to amend their pleading to allege the true identities of such defendants if and when they ascertain them.  Plaintiffs are informed and believe and on that basis allege that each of the defendants named as Doe 1 through 10, inclusive, is in some way responsible for each of the acts alleged in this complaint giving rise to a claim for relief.  As such, any reference hereinafter to "Defendants," or to any one or more of them, shall be deemed to include Does 1 through 10, inclusive.

14.   Plaintiff is informed and believes and on that basis alleges that each and every one of the Defendants herein, including without limitation Does 1 through 10, inclusive, is the principal or agent, or has otherwise acted in concert with or under the direction or control of, and therefore shares liability with, each of the other Defendants.

15.   Plaintiff is further informed and believes and on that basis alleges that such a unity of interest and ownership exists as between Defendants Ted Withrow and EBL that they are alter egos of each other, such that adherence to the fiction of their separate existence would work unjustly to deprive Plaintiffs of the full rights and remedies they otherwise would have against either one of them.  Therefore, all acts of Ted Withrow alleged in this pleading should be construed as acts of EBL as well, and vice-versa, such that each should be held liable jointly, severally or otherwise to the full and same extent as the other.

FACTS COMMON TO ALL CAUSES OF ACTION

16.   Starting about 2016, Plaintiff Gabriele acquired an interest in and took charge of the operations of a company in Miami Beach, Florida called Vision Hospitality Services, Inc. ("Vision"), which supplied security services primarily to

the hospitality industry – *i.e.*, hotels, event planners and the like.  Later, Plaintiff Rocke acquired an interest in Vision, and he and Gabriele helped put the company in a position to make a profit.  In or about 2018, Gabriele and then Rocke were introduced to Ted Withrow, who himself and through his investment firm Withrow Sinclair & Co. owned about a third of the shares in a publicly traded entity then called Pear Track Security Systems ("PTSS").  Ted Withrow discussed with Gabriele and Rocke at that time a possible acquisition of all stock of Vision by PTSS.

17.     Although he owned more shares by far than any other stockholder, Ted Withrow did not serve as an officer or director of PTSS.  Plaintiffs learned this was because he was the subject of a criminal action instituted by the SEC, resulting in an injunction barring him from holding such a position in a public company.  A true and correct copy of the SEC's announcement of that injunction, from the official SEC website, is attached hereto as Exhibit A.  At the time Gabriele and Rocke began interacting with PTSS, the father of Ted and Kyle Withrow, Edward William Withrow, Jr. ("Bill Withrow"), was the company's Executive Chairman, at least in name.

18.     PTSS did acquire the business of Vision in 2019, but not by buying its stock.  Rather, PTSS formed a subsidiary it named GX9 Security, Inc. (GX9"), entered into agreements with Rocke and Gabriele that made Rocke a director of the parent and Gabriele the president and CEO of GX9.  The customers of Vision then signed with GX9.  PTSS renamed itself Enigma-Bulwark, Limited – although its stock continues to trade under the "PTSS" ticker symbol – and later changed the name of GX9 to Enigma-Bulwark Security, Inc. ("EBS"), incorporated in the state of Delaware.  Kyle Withrow was the ostensible president and CEO of EBL.

*The Operative Contracts*

19.     PTSS, now EBL, entered into the following written contracts itself or through subsidiaries with Plaintiffs (the "Contracts," and each a "Contract"):

a.     A Consulting Agreement, entered into December 30, 2019 but effective May 1, 2019, by which EBRM engaged Gabriele to act as President of EBRM and President and CEO of GX9 (the "Gabriele Consulting Agreement"), a true and correct copy of which is attached hereto as Exhibit B, and which replaced an identical agreement entered into earlier in the year and also effective May 1, 2019 with a different wholly-owned EBL subsidiary;

b.     An Option Agreement, effective May 1, 2019, by which PTSS granted Gabriele options to acquire shares of PTSS stock on the terms set forth therein and according to a schedule attached thereto (the "Gabriele Option Agreement"), a true and correct copy of which is attached hereto as Exhibit C;

c.     A September 13, 2019 letter amending the Gabriele Option Agreement, accelerating the vesting of specified stock options upon reaching certain performance criteria (the "Gabriele Option Amendment"), a true and correct copy of which is attached hereto as Exhibit D;

d.     A Non-Compete Agreement, dated May 15, 2019, by which Gabriele had the right to, and did, acquire 6,667,000 shares of PTSS at par value of $0.001 per share, or $6,667, in exchange for, among other things, his agreement not to "provide his services to any other entity in the hospitality security business in the United States" for a period ending the later of (i) May 1, 2024, or (ii) two years after the expiration or termination of the Gabriele Consulting Agreement (the "Gabriele Non-Compete"), a true and correct copy of which is attached hereto as Exhibit E;

e.     A Consulting Agreement, effective May 1, 2019, by which PTSS engaged Rocke to render consulting services and to serve as on the board of directors of PTSS (the "Rocke Consulting Agreement" and, with

the Gabriele Consulting Agreement, the "Consulting Agreements"), a true and correct copy of which is attached hereto as Exhibit F;

f.      An Option Agreement, effective May 1, 2019, by which PTSS granted Leafy options to acquire PTSS shares on terms set forth therein and according to a schedule attached thereto (the "Leafy Option Agreement" and, with the Gabriele Option Agreement, the "Option Agreements"), a true and correct copy of which is attached hereto as Exhibit G;

g.      A September 13, 2019 letter amendment to the Leafy Option Agreement, which accelerated the vesting of specified stock options upon the achievement of certain performance criteria (the "Leafy Option Amendment" and, with the Gabriele Option Amendment, the "Option Amendments"), a true and correct copy of which is attached hereto as Exhibit H; and

h.      A Non-Compete Agreement, dated May 15, 2019, by which Rocke had the right to, and Leafy as his nominee did, acquire 6,667,000 shares of PTSS at par value of $0.001 per share, or $6,667, in exchange for, among other things, his agreement not to "provide his services to any other entity in the hospitality security business in the United States" for a period ending the later of (i) May 1, 2024, or (ii) two years after the expiration or termination of the Rocke Consulting Agreement (the "Rocke Non-Compete" and, with the Gabriele Non-Compete, the "Non-Competes"), a true and correct copy of which is attached hereto as Exhibit I.

The Non-Competes also protect Gabriele and Rocke from dilution if additional shares get issued, allowing them to acquire at par sufficient shares to maintain their respective stockholder percentages.  Pursuant to that provision in each of their Non-Competes, Gabriele and Rocke each purchased 105,000 more shares when additional PTSS shares issued in connection with another transaction.

*Representations Made to Induce Plaintiffs to Enter into the Contracts*

20.     As a material inducement for Gabriele and Rocke to enter into the Contracts and move the business of Vision into EBL, Ted and Kyle Withrow both repeatedly represented on numerous occasions before Gabriele and Rocke signed their agreements that EBL had begun the process and planned to raise at least one million dollars ($1,000,000) in debt or equity financing to grow the business of EBL and its subsidiaries.  They provided Gabriele and Rocke with materials such as a draft business plan, a draft offering memorandum and financial projections that they had prepared to present to potential investors as evidence of their intent to raise the additional capital as represented.  Furthermore, Ted and Kyle Withrow and Calli Bucci, EBL's CFO, represented to Gabriele and Rocke repeatedly before they entered into their contracts, as well as afterwards, that EBL would update its financials and SEC reporting – having not filed a 10-K annual report since 2015 – so that EBL could present itself as fully compliant and current in order to have any potential investor(s) or lender(s) even consider the possibility of providing the financing desired by EBL.

21.     In addition, because the Consulting Agreements provided for Rocke to become a director, and Gabriele an officer of a subsidiary, of EBL, Rocke and Gabriele felt it critical that EBL acquire directors and officers ("D&O") insurance.  That Ted Withrow had a criminal conviction and SEC injunction against him made that condition even more significant to them.  Accordingly, the Defendants assured Gabriele and Rocke, both before they entered into their agreements and after, that EBL would obtain the insurance upon which they had insisted once EBL had raised $500,000 of external capital.  The parties, therefore, made EBL's obligation to do so a material term of their agreements.

*Plaintiffs' Performance and the Corporate Defendants' Nonperformance*

22.     By the year ended December 31, 2019, Gabriele, with assistance from Rocke, had made GX9, later EBS, into a profitable venture.  As such, EBRM and

EBL paid Gabriele and Rocke, respectively, a profit share of $26,986 each.  That sum represented, pursuant to section 4.4 of each of their Consulting Agreements, "12.5% of the Adjusted Gross Earnings of GX9" for 2019, with "Adjusted Gross Earnings" defined as "all revenues accounted by GX9 … from its services" less the "direct labor costs of GX9 … employees engaged in providing the services which generate" such revenues.

23.     The Consulting Agreements also provided for Gabriele and Rocke to receive an annual "consulting fee" – $175,000 for Gabriele and $150,000 for Rocke – referred to as the "Base Fee" in section 4.1 of each agreement.  These fees could be "deferred and memorialized in the form of an interest bearing corporate convertible promissory note" until certain events transpired: (i) in Gabriele's case, once "the Company or its subsidiaries generate positive cashflow;" and (ii) in Rocke's case, "[u]ntil such time as the Minimum Capital Investment [of $1,000,000] has been secured."  EBL never did raise the million dollars, so Rocke received his pro-rated Base Fee of $100,000 for 2019 in the form of a note. Gabriele also received his pro-rated Base Fees of $116,667 for 2019 in the same manner, even though GX9 had generated sufficient profit and cash in 2019 for Gabriele and Rocke each to earn and get paid a profit share.

24.     Section 4.2(c) of the Consulting Agreements further called for the Base Fee deferments to end if, "[a]fter a period of twelve (12) months, the Company has not secured the aggregate investment of one million ($1,000,000) dollars."  In that event, "the Company will not continue to defer the Consultant's fee," and thus had to pay the Base Fees "monthly by wire transfer" if it did not terminate the agreements under section 5.1 thereof, which it did not do as to either. Yet, neither Gabriele nor Rocke ever received another nickel of Base Fee after 2019, either in cash or by note.  Nor has either received any further profit share, despite their calculation of the right to receive over $50,000 each for 2020, and more into the future as described more fully below.

**COMPLAINT**

25.     The Consulting Agreements, Option Agreements and Option Amendments further granted Leafy the right to acquire an additional 6,875,093, and Gabriele 2,750,040, shares of EBL stock at various times or upon certain events at an exercise price of $0.005 per share.  The Option Amendments accelerated the option for each to acquire about half his allotted shares, so by January 2020, and as recognized by EBL, Leafy had exercised about 3,437,544 of its options, and Gabriele 1,375,020, at their contractual prices.  Leafy and Gabriele also have exercised additional options as described more fully below, but EBL has refused to acknowledge this or to issue those shares.

*Defendants' Manifest Intent Not to Perform Their Promises When Made*

26.     After the end of 2019, the Corporate Defendants failed to perform material terms of the Consulting Agreements.  Neither Gabriele nor Rocke has received any of his Base Fee or profit share for any period following 2019.  EBL did not raise the $1,000,000 "Minimum Capital Investment" envisioned by section 4.2 of those Contracts, or put themselves in a position to do so by making the SEC filings that EBL had not done since 2015, or preparing (and having audited) customary financial documentation that a prospective financier would expect to see before considering a loan or investment.  The Individual Defendants instead appeared to devote most of their attention to another company in which they also had ownership interests, Parallax Health Sciences, Inc. ("Parallax"), and largely ignored EBL once Gabriele and Rocke started making money for it through GX9/EBS.

27.     Plaintiffs have information and believe that the Individual Defendants lost interest in EBL once they saw that GX9/EBS generated sufficient revenue for EBL to upstream any excess from GX9/EBS into its own accounts for Ted Withrow and/or his affiliates to skim for their own personal use.  From their dealings with Defendants, it appeared clear that Ted Withrow ran EBL and made the major decisions concerning it, and Kyle Withrow and Bucci merely acted at his

-10-

instruction and in aid of his plans.  As such, Plaintiffs are informed and believe that, given the personal interests and de facto control of Ted Withrow, he and the other Defendants had planned all along to abandon Plaintiffs once GX9/EBS began to infuse cash into the enterprise, and thus intended not to perform their promises to Plaintiffs at the time they made them.

28.    Plaintiffs so believe not solely due to Defendants' failure to perform itself, but based on a number of other facts.  First, the failure to perform happened so soon after the promises were made.  Second, EBL had essentially no revenue after 2015 and until the Vision customers transitioned to GX9.  Third, Plaintiffs learned that EBL owed significant sums to Ted Withrow from prior activities. Fourth, EBL regularly swept the accounts of GX9/EBS, and Ted Withrow took most of those funds for himself or his affiliates, furthering his own interests over those of other shareholders and creditors of EBL.  Based on such facts, Plaintiffs believe that Ted Withrow saw an opportunity for EBL finally to start generating some revenue from Vision so he could siphon off any excess to use for himself or his other ventures.  Accordingly, he and the other Defendants made false promises to Plaintiffs to induce them to enter into the Contracts, including those stated therein as well as others, such as the assurance of their intent to raise more money for EBL and to shore up EBL's own regulatory and financial affairs in order to put itself in a position to raise such funds.

*Termination of the Consulting Agreements for "Good Reason"*

29.    Left alone with GX9/EBS but without support or compensation while EBL and Ted Withrow reaped the benefits of their revenue-generating work, Gabriele and Rocke had no obligation to continue funding the rest of the company and its principals for free.  Both had the right to terminate immediately their engagements under the Consulting Agreements with "Good Reason," which included, as set forth in section 6.2 of both Contracts, "a material breach of this

agreement by Company" and the "non securing of the Minimum Capital Investment within twelve months hereof …."

30. The above "Good Reasons" existed for Gabriele and Rocke to terminate their relationship with Defendants. EBL and EBRM breached the Consulting Agreements by failing to compensate Rocke and Gabriele, respectively, as those Contracts required in section 4 thereof. In addition, the Minimum Capital Investment was not obtained.

31. For the cited "Good Reasons," Gabriele and Rocke gave notice of the termination of their engagements with the Corporate Defendants in April 2021 in accordance with section 6.2 of their Consulting Agreements. This triggered the following as set forth in section 7.4 of the Consulting Agreements:

> Upon termination of Consultant's engagement by Consultant for Good Reason, Company will continue to pay, including health benefits, Consultant's Base Fee for the remainder of the period ended three years after the date hereof and Profit Share for all calendar years ended December 31, 2024 …. All unvested options within Initial Grant shall immediately vest.

Despite the foregoing, the Corporate Defendants paid neither Gabriele nor Rocke their remaining Base Fees or the profit shares due them.

32. Shortly after tender of the termination notices, and in accordance with sections 4.3 and 7.4 of the Consulting Agreements and sections 4 and 5 of the Option Agreements, Gabriele and Leafy exercised the options to acquire the shares remaining available to them. These totaled to 3,261,261 for Leafy and 1,304,506 for Gabriele. Despite the proper exercise of their clear option rights, EBL did not and still does not recognize such exercise and has not issued those shares.

*EBL's Published Falsehoods About Rocke*

33. In his April 12, 2021 resignation, Rocke cited as "Good Reasons" for doing so "the material breach of the [Consulting] Agreement by the Company and

its failure to secure the 'Minimum Capital Investment' within twelve months of the date of the Agreement."  In the same letter, he "resign[ed] from the Board of Directors of the Company in light of the Company's failure to abide by basic corporate governance principles and sound business practices."  Among other things, Ted Withrow, despite the legal prohibition against him doing so, ran EBL with its ostensible officers Kyle Withrow and Bucci as his puppets, and diverted corporate funds to his own use to the detriment of EBL and its shareholders.

34.     Notwithstanding Rocke's unambiguous criticism of EBL upon leaving it, the company filed with the SEC on April 30, 2021 a Form 8-K regarding his resignation from the board of directors.  It misleadingly stated that "Mr. Rocke made no specific complaint with regards to the Company's policies and practices." Moreover, it falsely stated that Rocke's "resignation was preceded by the Company's inquiry into [his] performance in connection with the [Consulting] Agreement," and that Rocke "did not provide a response to the Company's inquiry …."  And, notwithstanding that the Rocke Consulting Agreement established no minimum time commitment for him to render services to EBL – instead setting a "maximum" limit of no more than "80 hours in any calendar month," and not tying his compensation in any way to the time he devoted to the company – the 8-K falsely represented that EBL was conducing "an evaluation … to validate Mr. Rocke's work performance and work hours to substantiate the related accrual of compensation under the Agreement."  It stated that Rocke resigned shortly after EBL's inquiry into his work performance.

35.     The 8-K states falsehoods about Rocke and assails his business competence, honesty and integrity.  EBL management had not previously raised any "performance" issues with him.  Nor could it legitimately question the time he devoted to EBL, such as by offering assistance in financial statement preparation – refused by Bucci – and in reviewing fund raising and business development opportunities ostensibly managed by Ted Withrow.  Accordingly, Rocke provided

a letter of objection to EBL in response to its false and defamatory Form 8-K, but the company took no remedial action and did not publish Rocke's objection.

36.     Then, on June 25, 2021, someone at EBL improperly used Rocke's username and password to sign in as him on the SEC "Edgar" website to file an SEC "Form 5" purporting to state changes in Leafy's beneficial ownership of EBL stock.  The form falsely reports Leafy's last option exercise as having occurred in January 2020, and omits entirely its exercise as to the last 3,261,261 shares shortly after Rocke's resignation.  The filing also misrepresents that Rocke signed it.

*The Board's Refusal to Protect EBL from Ted Withrow's Misconduct*

37.     Rocke and Leafy had their corporate counsel attempt to contact EBL to address their concerns about its misrepresentations concerning them.  EBL took no remedial action in response to them.

38.     More specifically, on January 11, 2022, Plaintiffs' litigation counsel sent a letter to each member of EBL's board of directors demanding that it investigate and take action against Ted Withrow for diverting corporate funds for his personal use to the detriment of the corporation and the other holders of its publicly trades shares.  The letter included a draft of this complaint that counsel stated Plaintiffs would file absent appropriate board action.  One of the directors responded by letter stating that the board would set up a Special Litigation Committee" to investigate Plaintiffs' allegations and report to them by February 15, 2022.  That representation proved consistent with EBL's history of false promises, as its own deadline came and went with no action on Plaintiffs' demand made in accordance with Corp. Code § 800(b)(2).  Plaintiffs thus have satisfied the conditions required to bring this action derivatively, in the corporate right, to obtain redress for the harm caused to the corporation by the misconduct of Ted Withrow, including in violation of the SEC judgment enjoining him from acting as he has for EBL, and as improperly aided and abetted by others.

## FIRST CAUSE OF ACTION

Breach of Contract

(By All Plaintiffs Against EBL and EBRM)

39.     Plaintiffs refer to and incorporate each and every allegation above in paragraphs 1 through 38, inclusive, as though fully set forth at this point.

40.     The Plaintiffs identified above in paragraph 19 entered into the Contracts described in that paragraph with the Defendants specified therein.

41.     Each Plaintiff performed all of his or its obligations under each of their respective Contracts, except, if at all, to the extent excused by the failure to perform by the Defendant to each such Contract.

42.     The following Defendants breached the Contracts listed below in the manner described:

    a.     EBRM breached the Gabriele Consulting Agreement by failing to do the following:

        i.     Pay Gabriele any part of his Base Fee after December 31, 2019, all of which EBRM owed in cash due to Gabriele having made GX9/EBS cashflow positive by then, and all of which, in the amount of at least $408,333, came due upon his termination of that Contract with Good Reason, per sections 4.1, 4.2, 6.2 and 7.4 thereof;

        ii.     Pay Gabriele his share of profits for 2020, which he calculates at a minimum of $51,946.30, as dictated by section 4.4 thereof and Exhibit C thereto, or to acknowledge its obligation to continue to pay him his profit share through December 31, 2024 as described more fully in the Second Cause of Action below; and

        iii.     Cause EBL to issue the remaining 1,304,506 shares as to which Gabriele exercised his option to acquire pursuant to sections 4.3(b) and 7.4 of the Gabriele Consulting Agreement.

b.    EBL also breached the Gabriele Option Agreement and Amendment by failing to issue the remaining 1,304,506 shares owing to Gabriele upon or since the exercise of his option to acquire them.

c.    EBL breached the Rocke Consulting Agreement by failing to do the following:

i.    Pay Rocke any part of his Base Fee after December 31, 2019, all of which EBL owed in cash at least from May 1, 2020 since, under section 4.2(c) of that Contract, EBL had "not secured the aggregate investment of one million ($1,000,000) dollars" within 12 months after the May 1, 2019 effective date of the Contract, in which case EBL agreed that it "will not continue to defer the Consultant's fee," making up to another $50,000 due to Rocke by note and at least another $300,000 owing to him in cash as a result of his termination of his Consulting Agreement with Good Reason, as stipulated in sections 4.1, 4.2, 6.2 and 7.4 thereof;

ii.    Pay Rocke his share of profits for 2020, which he calculates at a minimum of $51,946.30, as dictated by section 4.4 thereof and Exhibit C thereto, or to acknowledge its obligation to continue to pay him his profit share through December 31, 2024 as described more fully in the Second Cause of Action below; and

iii.    Issue the remaining 3,261,261 shares as to which Leafy exercised its option to acquire pursuant to sections 4.3(b) and 7.4 of the Rocke Consulting Agreement.

d.    EBL also breached the Leafy Option Agreement and Amendment by failing to issue the remaining 3,261,261 shares as to which Leafy exercised its option to acquire.

43.    In addition to their express terms, California law, which governs all of the Contracts, implies into all of them a covenant of good faith and fair dealing.

That covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his or its own, but also the duty to do everything that the contract presupposes the contacting party will do to accomplish its purpose.

44.     Section 4.2 of the Consulting Agreements contemplated EBL obtaining a "Minimum Capital Investment" of one million dollars ($1,000,000) by debt or equity financing within a year of their May 1, 2019 effective dates, with benefits inuring to Gabriele and Rocke in that event.  Section 1.1 of the Rocke Consulting Agreement in particular provided for Rocke himself to render "capital formation" among the "consulting" and other services that EBL "may request" of him.  The stated contractual intent for EBL to secure an additional $1 million in financing within a year imposed a covenant of good faith and fair dealing upon EBL that it would take reasonable steps to put itself in a position within that time to raise such funds.  Yet, despite repeated assurances that it would get current on its public filings and prepare the type of financial information that a prospective lender or investor would reasonably expect to see, and although Rocke repeatedly attempted to assist it in doing so, EBL breached the covenant of good faith and fair dealing implied in the Consulting Agreements by never taking such steps or making any apparent effort to raise any additional funds to help grow its business during any of time that Gabriele and Rocke served the company.

45.     As a direct and proximate result of the breaches of the Contracts by the Corporate Defendants as set forth above, Plaintiffs have suffered damages in at least the following amounts:

a.     As to Gabriele:

i.     $116,667 for his pro-rated 2019 Base Fee under the Gabriele Consulting Agreement, which he should have been paid in cash, but instead was given a note that remains unpaid and is accruing interest at the rate of 5% per annum from January 1, 2020;

        ii.       For his Base Fee owing in cash for the remainder of the 3-year term of the Gabriele Consulting Agreement, all $408,333 of which became due and payable when he terminated that Contract for Good Reason, and accruing interest at the statutory rate from when due;

        iii.      $51,946.30 for his share of profits for 2020, with interest accruing thereon at the statutory rate from the end of that year, and his share of profits thereafter through December 31, 2024; and

        iv.      1,304,506 shares of EBL stock.

b.    As to Rocke and Leafy:

        i.       $100,000 for Rocke's pro-rated 2019 Base Fee under his Consulting Agreement, in the form of the note issued him by EBL but remaining unpaid and accruing interest at the rate of 5% per annum starting January 1, 2020;

        ii.       For Rocke's Base Fee of $350,000 owing in cash for the remainder of the 3-year term of his Consulting Agreement, which became due and payable when he terminated that Contract for Good Reason on April 12, 2021, and accruing interest at the statutory rate from no later than that date;

        iii.      $51,946.30 for Rocke's share of profits for 2020, with interest accruing thereon at the statutory rate from the end of that year, and his share of profits thereafter through December 31, 2024; and

        iv.      3,261,261 shares of EBL stock owing to Leafy.

46.    Gabriele and Leafy also have the right to recover their reasonable attorneys' fees pursuant to section 19 of each of their Option Agreements.

<u>SECOND CAUSE OF ACTION</u>

Declaratory Judgment

(By All Plaintiffs Against EBL and EBRM)

47.     Plaintiffs refer to and incorporate each and every allegation above in paragraphs 1 through 46, inclusive, as though fully set forth at this point.

48.     Gabriele and Rocke contend that they have a right to compensation in the future under their Consulting Agreements, in the form of as yet unpaid profit share from the year 2020 and through December 31, 2024, and unpaid Base Fees from January 1, 2020 through April 30, 2022, in cash.  Gabriele and Leafy further take the position that they have a right under the Consulting Agreements and Option Agreements and Amendments to exercise, and properly have exercised, their options for 1,304,506 and 3,261,261 shares of EBL stock, respectively, and that EBL must therefore issue those shares to them.

49.     Plaintiffs are informed and believe based on the statements, acts and omissions of EBL and EBRM that the Corporate Defendants deny that Plaintiffs have the rights claimed above, and deny that EBL and EBRM have the obligations that Plaintiffs allege above.  As such, an actual controversy exists relating to the legal rights and duties of Plaintiffs and the Corporate Defendants, making this a proper case for a judgment declaring the respective rights and duties of the identified parties regarding the matters set forth above.

50.     Plaintiffs therefore seek judgment declaring that Gabriele and Rocke have the right under their Consulting Agreements to payment of their respective Base Fees in cash from January 1, 2020 through April 30, 2022, and of their shares of profit from January 1, 2020 through December 31, 2024, and ordering EBRM and EBL, respectively, to pay all such amounts due for those forms of compensation.  Plaintiffs further seek judgment declaring that Gabriele and Leafy have the right under their Consulting Agreements and Option Agreements and Amendments to exercise, and properly have exercised, their options for 1,304,506

and 3,261,261 shares of EBL stock, respectively, and ordering EBL to issue those shares to them.

51.     Further, Business & Professions Code section 16600 provides, subject to exceptions not applicable in this case, that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Yet, the Gabriele and Rocke Non-Competes purport to exactly that. Accordingly, Gabriele and Rocke contend that their Non-Competes are to that extent void.

52.     Plaintiffs are informed and believe based on the statements, acts and omissions of EBL that it claims it may enforce the Non-Competes to their full purported extent. As such, an actual controversy exists relating to whether and, if so, to what extent, the Non-Competes may be enforced against Gabriele and Rocke. Those Plaintiffs therefore seek judgment declaring that the Non-Competes may not and do not restrain them from "providing services to any other entity in the hospitality security business in the United States," as the Non-Competes purport to do.

<u>THIRD CAUSE OF ACTION</u>

Fraud

(By All Plaintiffs Against All Defendants)

53.     Plaintiffs refer to and incorporate each and every allegation above in paragraphs 1 through 38 and 45, inclusive, as though fully set forth at this point.

54.     Defendants made the following promises in the Contracts, prior to and at the time of entering into them, to induce Plaintiffs to enter into the Contracts:

a.      That EBL would obtain and maintain a minimum of $500,000 in D&O insurance;

b.      That EBRM would pay Gabriele and EBL would pay Rocke an annual Base Fee of $175,00 and $150,000, respectively, including in cash starting no later than May 1, 2020;

-20-

**COMPLAINT**

c.    That EBL additionally would pay Gabriele and Rocke "12.5% of the Adjusted Gross Earnings of GX9" every year through December 31, 2024; and

d.    That EBL would issue specified numbers of shares of EBL stock to Gabriele and Leafy upon their exercise of the options granted them under Consulting Agreements and Option Agreements and Amendments.

55.    Defendants made the following additional representations prior to, at the time of and subsequent to entering into the Contracts, to induce Plaintiffs to enter into the Contracts and continue performing thereunder:

a.    That Defendants would attempt to obtain a Minimum Capital Investment of $1,000,000 by May 1, 2020; and

b.    That Defendants would do those things reasonably necessary to put EBL in a position to raise the Minimum Capital Investment within that time, such as updating its SEC filings and financial reporting.

56.    Plaintiffs are informed and believe, including based on facts alleged in paragraphs 26-28 above, that Defendants knew their promises and representations were false when made, and that they had no intention to perform such promises at the time they made them.  On further information and belief, Defendants made such promises and representation in order to induce Plaintiffs to enter into the Contracts so that EBL would finally have a source of revenues after having none for the previous several years, including for Ted Withrow to misappropriate for himself and for him and the other Individual Defendants to pursue other projects of greater interests to them.

57.    Plaintiffs did not know of the falsity of any of Defendants' promises or representations until after entering into the Contacts and seeing that Defendants did not perform as promised with respect to obtaining D&O insurance and the Minimum Capital Investment and did not compensate them as promised after 2019 except with respect to an option exercise in January 2020.  Instead, they relied on

the truth of the promises and representations by entering into the Contract, and did so reasonably based on the information they had at the time.

58.     As a direct and proximate result of their justifiable reliance on the false representations and promises made and/or aided and abetted by Defendants, Plaintiffs suffered damages in the form of the consideration under the Contracts that they were led to believe they would but in fact did not receive, as set forth in paragraph 45 above and incorporated herein.

59.     In making or aiding and abetting the false representations and promises alleged herein, Defendants acted with oppression, malice and/or fraud in that they knew the falsity of their statements and intended thereby to deceive Plaintiffs and use them to fund Defendants' own improper business purposes to the detriment of Plaintiffs.  Such willful misconduct by Defendants entitles Plaintiff to an award of exemplary and punitive damages adequate to make an example of and to punish Defendants for and deter them in the future from such wrongful conduct.

<u>FOURTH CAUSE OF ACTION</u>

Negligent Misrepresentation

(By All Plaintiffs Against All Defendants)

60.     Plaintiffs refer to and incorporate each and every allegation above in paragraphs 1 through 38, 45, 54 and 55, inclusive, as though fully set forth at this point.

61.     Defendants made the promises and representations set forth above in paragraphs 54-55 with no reasonable basis to believe their truth and reasonably expecting Plaintiffs to rely upon them by entering into the Contracts.  Defendants in fact did cause Plaintiffs to rely on their false promises and representations by entering into and performing under the Contracts exactly as Defendants expected, for their own benefit and to the detriment of Plaintiffs, as Plaintiffs did not know the falsity of the promises and representations at the time Defendants made them.

**COMPLAINT**

62.     As a direct and proximate result of their justifiable reliance on the false representations and promises made and/or aided and abetted by Defendants, Plaintiffs suffered damages in the form of the consideration under the Contracts that they were led to believe they would but in fact did not receive, as set forth in paragraph 45 above and incorporated herein.

FIFTH CAUSE OF ACTION

Derivatively on Behalf of EBL, for Breach of Fiduciary Duty

(By Gabriele and Leafy Against the Individual Defendants)

63.     Plaintiffs refer to and incorporate each and every allegation above in paragraphs 1 through 38, inclusive, as though fully set forth at this point.

64.     Defendant Ted Withrow, himself and through Withrow Sinclair, owns by a significant margin the greatest number of shares in EBL.  He exercises *de facto* control of the company.  In addition, while not formally titled as such due to SEC restrictions, Ted Withrow in fact acts as an officer and director of EBL.

65.     For all of these reasons, Ted Withrow owes a fiduciary duty to Plaintiffs Gabriele and Leafy as minority shareholders, and to EBL itself, not to act in a way to serve his own interests over or to the detriment of the interests the corporation or its other shareholders, including Gabriele and Leafy.  He further has such a duty based on the SEC criminal judgment not to so act.

66.     Ted Withrow breached his fiduciary duty to EBL and its shareholders by routinely misappropriating for his own personal use revenues generated by GX9 (later EBS) otherwise due to Gabriele and Rocke for their Base Fees and shares of profit or, to the extent in excess thereof, more appropriately for use in the business of EBL and its subsidiaries.  Ted Withrow's preference of his own interests above and to the detriment of those of the corporation and its other shareholders and contractors such as Gabriele and Rocke breaches his fiduciary duty.

67.     As officers of EBL themselves, Kyle Withrow and Bucci also owed the same fiduciary duties to the corporation and its shareholders, and breached that

-23-

**COMPLAINT**

duty by diverting or allowing the diversion of funds away from corporate uses and for the personal use of Ted Withrow or for themselves in other ventures such as Parallax.

68.     As a direct and proximate result of the Individual Defendants' breach of fiduciary duty, EBL and its shareholders have suffered damages according to proof, including as measured by funds wrongfully taken by or for the use of Ted Withrow, Kyle Withrow, Bucci and other ventures in which they have an interest.

69.     Defendants acted with oppression, malice and/or fraud in breaching and/or aiding and abetting each others' breaches of their fiduciary, in conscious disregard of the rights of EBL and its other shareholders.  Such willful misconduct by Defendants entitles Plaintiff to an award of exemplary and punitive damages adequate to make an example of and to punish Defendants for and deter them in the future from such wrongful conduct.

70.     Gabriele and Leafy have satisfied the statutory prerequisites for bringing this action derivatively for the benefit of EBL by making a demand that the EBL board of directors take action to rectify the breaches alleged above, and having that demand rejected by the board's inaction with no good faith reason. Gabriele and Leafy further have the right to recover from EBL their reasonable attorneys' fees and costs for pursuing this action for its benefit.

SIXTH CAUSE OF ACTION

Derivatively on Behalf of EBL, for Acts in Excess of Legal Authority

(By Gabriele and Leafy Against Ted Withrow)

71.     Plaintiffs refer to and incorporate each and every allegation above in paragraphs 1 through 38 and 64-70, inclusive, as though fully set forth at this point.

72.     The SEC criminal judgment against him prohibits Ted Withrow from acting as an officer or director of a penny stock company such as EBL for five years from the 2019 date of that judgment.  Nevertheless, Ted Withrow has acted

as if in fact an officer or director of EBL by taking actions and making decisions on behalf of the company appropriate only for an officer or director.

73.     Among other things, Ted Withrow has unilaterally directed or caused the diversion of corporate funds to himself when the company should have used such funds to pay Plaintiffs or to benefit the business of EBL.  He had no authority to do so under the SEC's prohibition.

74.      As a direct and proximate result of Ted Withrow's acts in excess of his authority and in violation of criminal prohibitions, EBL and its shareholders have suffered damages according to proof, including as measured by funds wrongfully taken by or for the use of Ted Withrow and other ventures in which he has an interest.

75.     Gabriele and Rocke have satisfied the statutory prerequisites for bringing this action derivatively for the benefit of EBL by making a demand that the EBL board of directors take action to rectify the *ultra vires* acts alleged above, and having that demand rejected by the board's inaction with no good faith reason. Gabriele and Rocke further have the right to recover from EBL their reasonable attorneys' fees and costs for pursuing this action for its benefit.

SEVENTH CAUSE OF ACTION

Defamation

(By Rocke Against EBL)

76.     Plaintiffs refer to and incorporate each and every allegation above in paragraphs 1 through 38, inclusive, as though fully set forth at this point.

77.     In its April 30, 2021 8-K report publicly filed with the SEC, EBL falsely stated that Rocke had given no specific reason for his resignation from its board of directors, and that his resignation followed an inquiry by the company into allegedly improper conduct on his part.  These statements are false in that Rocke did in fact detail the reasons for his resignation, and had not committed any

improper conduct and was not under any sort of investigation by EBL for allegedly having done so.

78.     These false statements are defamatory in that they call into question Rocke's business acumen, honesty and integrity.  They cause harm to Rocke's reputation and the pursuit of his profession as a businessperson.

79.     As a direct and proximate result of EBL's defamatory statements, Rocke has suffered damages in an amount subject to proof but adequate to compensate him for the foregoing harm and for the shame, hurt feelings and other emotional injury caused by such false and defamatory statements.  Even absent proof, the law assumes such damages and permits the trier of fact to award them in whatever sum it deems reasonable.

80.     EBL has acted with oppression, malice and/or fraud in publishing such statements in violation of Rocke's rights and with the intent to do him harm. Such willful misconduct by EBL entitles Rocke to an award of exemplary and punitive damages adequate to make an example of and to punish EBL for and deter it in the future from such wrongful conduct.

EIGHTH CAUSE OF ACTION

"False Light" Invasion of Privacy

(By Rocke Against EBL and Bucci)

81.     Plaintiffs refer to and incorporate each and every allegation above in paragraphs 1 through 38, inclusive, as though fully set forth at this point.

82.     EBL publicly disclosed information in its April 30, 2021 8-K filing and in the June 25, 2021 Form 5 filing that it made as if it were Rocke himself, with Bucci misappropriating his identity in the form of his username and password and using his name without authorization in the signature block as if he himself had signed it.

83.     The false light created by these disclosures would be highly offensive to a reasonable person in Rocke's position, and Rocke in fact finds them highly offensive and in violation and false portrayal of his private business matters.

84.     Rocke is informed and believes and on that basis alleges that EBL and Bucci knew their statements and actions would create a false impression about Rocke, acted with reckless disregard for the truth of such statements or whether they would create such a false impression, or acted negligently in determining the truth of the information or whether a false impression would be created by its disclosure or by misrepresenting Rocke's identity.

85.     As a direct and proximate result of the wrongful statements about Rocke by EBL and misuse of his identity by EBL through Bucci, putting him in a false light, Rocke has suffered damages to his business, profession, person and reputation in an amount subject to proof.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment in their favor as follows:

1.     On the First Cause of Action:

    a.     For money damages to Gabriele in the amount of at least $576,946.30, representing the entirety of his Base Fee and his profit share for the year ended December 31, 2020;

    b.     For interest on the foregoing at the contractual and statutory rates, as applicable;

    c.     For 1,304,506 shares of EBL stock to Gabriele;

    d.     For money damages to Rocke in the amount of at least $501,946.30, representing the entirety of his Base Fee and his profit share for the year ended December 31, 2020;

    e.     For interest on the foregoing at the contractual and statutory rates, as applicable; and

    f.     For 3,261,261 shares of EBL stock to Leafy.

2.     On the Second Cause of Action, for judgment declaring that:

a.     Gabriele and Rocke have the right to receive their unpaid Base Fees from January 1, 2020 through April 30, 2022 in cash, and ordering the payment thereof;

b.     Gabriele and Rocke have the right to receive their unpaid profit share in from the year 2020, and for payment of their profit shares through December 31, 2024 in cash, within no more than ninety (90) days after the end of the calendar year to which each such share applies, and ordering payment thereof;

c.     Gabriele and Leafy had the right to and properly did exercise their options for 1,304,506 and 3,261,261 shares of EBL stock, respectively, and ordering EBL to issue those shares to them; and

d.     The Non-Competes may not and do not restrain Gabriele or Rocke from "providing services to any other entity in the hospitality security business in the United States."

3.     On the Third Cause of Action:

a.     For money damages to Gabriele in the amount of at least $576,946.30, representing the entirety of his Base Fee and his profit share for the year ended December 31, 2020;

b.     For interest on the foregoing at the contractual and statutory rates, as applicable;

c.     For 1,304,506 shares of EBL stock to Gabriele;

d.     For money damages to Rocke in the amount of at least $501,946.30, representing the entirety of his Base Fee and his profit share for the year ended December 31, 2020;

e.     For interest on the foregoing at the contractual and statutory rates, as applicable;

f.     For 3,261,261 shares of EBL stock to Leafy; and

**COMPLAINT**

g. For punitive damages adequate in light of the net worth of Defendants, including their affiliates to which they have funneled money and devoted time to the detriment of EBL and Plaintiffs, to make an example of and to punish Defendants.

4. On the Fourth Cause of Action:

a. For money damages to Gabriele in the amount of at least $576,946.30, representing the entirety of his Base Fee and his profit share for the year ended December 31, 2020;

b. For interest on the foregoing at the contractual and statutory rates, as applicable;

c. For 1,304,506 shares of EBL stock to Gabriele;

d. For money damages to Rocke in the amount of at least $501,946.30, representing the entirety of his Base Fee and his profit share for the year ended December 31, 2020;

e. For interest on the foregoing at the contractual and statutory rates, as applicable; and

f. For 3,261,261 shares of EBL stock to Leafy.

5. On the Fifth Cause of Action:

a. For damages to EBL according to proof, including as measured by funds wrongfully taken by or for the use of Ted Withrow, Kyle Withrow, Bucci and other ventures in which they have an interest;

b. For interest on the foregoing amount at the statutory rate; and

c. For punitive damages adequate in light of the net worth of each to make an example of and to punish Defendants.

6. On the Sixth Cause of Action:

a. For damages to EBL according to proof, including as measured by funds wrongfully taken by or for the use of Ted Withrow, Kyle Withrow, Bucci and other ventures in which they have an interest; and

-29-

**COMPLAINT**

b.      For interest on the foregoing amount at the statutory rate.

7.      On the Seventh Cause of Action:

a.      For damages to Rocke in an amount subject to proof, including as adequate to compensate him for the shame, hurt feelings and other emotional injury caused by Defendants' false and defamatory statements, in whatever sum the trier of fact deems reasonable; and

b.      For punitive damages adequate in light of the net worth of each to make an example of and to punish Defendants.

8.      On the Eighth Cause of Action, for damages to Rocke in his business, profession, person and reputation, in an amount subject to proof.

9.      On all causes of action:

a.      For costs of suit, including such attorneys' fees as may be recoverable by contract and/or statute; and

b.      For such other and further relief as the Court may deem just and proper.

DATED:  March 2, 2022           GENGA & ASSOCIATES, P.C.

By: _John Genga_____
      John M. Genga
      Attorneys for Plaintiffs
      MICHAEL GABRIELE, DAVID ROCKE
      and LEAFY LANE LIMITED

COMPLAINT

<u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand trial by jury on all issues so triable.

DATED:  March 2, 2022              GENGA & ASSOCIATES, P.C.


By: _____
     John M. Genga
Attorneys for Plaintiffs
MICHAEL GABRIELE, DAVID ROCKE
and LEAFY LANE LIMITED

**COMPLAINT**